JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, Joshua Madsen, appeals various interlocutory rulings made by the trial court arising from his criminal conviction of rape and kidnaping during a jury trial.
 {¶ 2} T.C. (the "victim") met Madsen in August 2001, and they saw each other romantically on and off until July 2002. On August 2, 2002, Madsen left two messages on the victim's voice mail threatening to harm her. On August 3, the victim hosted a party at her house in order to celebrate her freedom from Madsen. She invited all of her friends and some of Madsen's friends to the party.
 {¶ 3} On August 5, Madsen arrived at the victim's home and demanded she let him inside. She opened the door and noticed Madsen had been drinking. Madsen started to scream and yell at the victim about her party and forced her upstairs into her bedroom. Once in the bedroom, Madsen began choking, pushing and punching her while questioning whether she had been seeing someone else.
 {¶ 4} Madsen refused to let the victim leave the bedroom. He then forced her onto the bed and told her to remove her clothes. He then raped her using his fingers, mouth, and penis. The victim repeatedly told Madsen to stop, but he refused. He then demanded she perform oral sex on him. The victim was terrified of what Madsen would do to her, so she complied with his demands.
 {¶ 5} After the rape, Madsen forced the victim call everyone who had been at the August 3 party to apologize for any derogatory comments she might have made about him. Madsen then left the victim's house, only to return later that evening. When Madsen returned to her home, the victim noticed he had continued to drink and was still intoxicated and angry. In the living room, Madsen again raped the victim, forcibly performing oral sex on her and engaging in vaginal and oral sex again. Madsen then commanded her to perform oral sex on him, and she complied. Madsen left the victim's home around 3:00 a.m., when his brother arrived.
 {¶ 6} As a result of the rapes and beatings on August 5, the victim sought medical attention on August 9 at the Miles-Broadway Health Center; however, the victim was afraid to report the beatings and rapes to the police.
 {¶ 7} On August 18, 2002, Madsen returned to the victim's home upset because he had learned that she had performed as an exotic dancer at a friend's bachelor party on August 17. Madsen pushed his way into the victim's home and ordered her to get him a screwdriver. Madsen asked the victim how much money she had made, but then saw her purse and took the money from it. Madsen then pushed the screwdriver into the victim's back threatening to stab her, then ordered her outside. He then proceeded to enter a vehicle owned by Nicole Sanders, one of the victim's friends. Madsen believed that Sanders had damaged his truck. While in Sanders' vehicle, Madsen destroyed the interior using the screwdriver. He then left the victim's home.
 {¶ 8} Sanders and the victim went to the police station to file a report as a result of the damage to Sanders' vehicle. At this point, the victim felt she had to notify the authorities of the rapes because she feared her life was in danger. At the police station, she made a report detailing the events occurring on both August 5 and August 18, 2002.
 {¶ 9} On August 29, 2002, a Cuyahoga County Grand Jury returned an 11-count indictment as a result of the acts which occurred on August 5, 2002, charging Madsen with eight counts of rape, in violation of R.C.2907.02, one count of kidnaping, in violation of R.C. 2905.01, and one count of domestic violence, in violation of R.C. 2919.25. Madsen was also charged with one count of aggravated robbery, in violation of R.C. 2911.01, for the acts which occurred on August 18, 2002. T.C. was the victim of all eleven counts.
 {¶ 10} On September 5, 2002, Madsen was arraigned and pleaded not guilty to the entire indictment. On November 18, 2002, a jury trial began. At the close of the State's case, Madsen moved to dismiss the entire indictment under Crim.R. 29. The trial court dismissed only count ten against Madsen, which alleged domestic violence.
 {¶ 11} On December 9, 2002, the jury found Madsen guilty of rape on counts one through six and not guilty of rape on counts seven and eight. The jury returned a verdict of guilty on the charge of kidnaping and a verdict of not guilty as to the charge of aggravated robbery.
 {¶ 12} On January 2, 2003, Madsen was sentenced to three years in prison for each count of rape and three years for kidnaping. The sentences for each count of rape were ordered to run consecutive to each other and concurrent with the three years for kidnaping. Madsen was sentenced to a total of 18 years in prison. This timely appeal follows.
 {¶ 13} The appellant presents thirteen assignments of error for review, which are addressed in varying order:
 {¶ 14} "I. THE TRIAL COURT ERRED IN DISALLOWING EVIDENCE OF THE ALLEGED VICTIM'S MULTIPLE SEXUALLY TRANSMITTED DISEASES."
 {¶ 15} The appellant argues the trial court committed reversible error when it did not permit him to admit evidence of the alleged victim's multiple sexually transmitted diseases. The appellant claims that the lower back and abdominal pains that the victim testified about and attributed to the rapes was in fact attributable to the gonorrhea, chlamydia, and/or the pelvic inflammatory disease (hereinafter "STD's") she was diagnosed with at the Miles-Broadway Health Center on August 9. The prosecution in turn argued, and the trial court held, admission of this evidence was highly prejudicial and irrelevant in nature.
 {¶ 16} R.C. 2907.02(D) states:
 {¶ 17} "Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted unless it involves the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."
 {¶ 18} It is within the trial court's discretion to determine the relevancy of evidence in rape prosecutions and to apply the rape shield law in a manner that best meets the purpose behind the statute. State v.Banks (1997), Ohio App.3d 592; State v. Hart (1996), 112 Ohio App.3d 327.
 {¶ 19} To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations." Statev. Jenkins (1984), 15 Ohio St.3d 164, 222, quoting Spalding v. Spalding
(1959), 355 Mich. 382, 384-385. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Id.
 {¶ 20} We find appellant's argument without merit. First, it is irrelevant to the appellant's defense that the victim was suffering from sexually transmitted diseases; appellant admits having consensual sexual relations with the victim. Furthermore, various witnesses testified seeing the victim shortly after the rape and stated she had bruises on her neck, face, and lower back. Any reasonable mind could not conclude that these bruises were caused by an STD. Even if the defense could provide an alternative reason for her abdominal pains, there is enough additional evidence to support that the victim was beaten by the appellant prior to the rapes. Accordingly, after the trial court ruled that evidence of the victim's STD's would not be admitted, the prosecution agreed not to mention the abdominal pain and to focus solely on the victim's bruises when questioning witnesses.
 {¶ 21} Second, R.C. 2907.02(D) limits the introduction of evidence relative to the victim's sexual activity in a rape trial to that which demonstrates: 1) the origin of the semen; 2) the origin of pregnancy or disease; and (3) the victim's past sexual activity with the offender. Further, this evidence is limited to the extent that the trial court finds the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value. The appellant claims that the admission of evidence of the victim's STD's would provide another explanation for the physical pains she experienced; however, admitting this evidence is highly prejudicial and inflammatory and does not fall within a statutory exception. The appellant does not argue the origins of the victim's STD's or the victim's past sexual history with the appellant.
 {¶ 22} Appellant's first assignment of error is hereby overruled. The trial court did not abuse its discretion in finding that the admission of the victim's sexually transmitted diseases would be inflammatory and highly prejudicial to the jury, outweighing its probative value.
 {¶ 23} "II. The trial court committed plain error in allowing testimony of alleged "other acts" of the defendant in addition to allowing evidence of the defendant's previous sexual activity."
 {¶ 24} The appellant claims the trial court committed plain error in allowing the victim to testify about incidents occurring prior to the rape, specifically while the victim and Madsen dated. The victim testified that the defendant often compelled her to have sexual intercourse with him (Tr. at 356.); he would count sequentially to the number five in a threatening manner when he wanted her to do something, and there would be a consequence if he reached five (Tr. at 322.); he choked her with a dog leash he had put around her neck (Tr. at 323.); and he would order her around like a child when his brother was present. (Tr. at 368-369.) In addition, Detective Strickler testified that the appellant had a previous arrest for carrying a concealed weapon (Tr. at 562).
 {¶ 25} The appellant argues this testimony by the victim and Detective Strickler constitutes "prior bad acts" and is not admissible under Ohio Evid.R. 404(B).
 {¶ 26} We note that the appellant failed to object to a majority of the testimony regarding the above stated evidence; therefore, in the absence of objection, any error is deemed to have been waived unless it constitutes plain error. To constitute plain error, the error must be obvious on the record, palpable, and fundamental so that it should have been apparent to the trial court without objection. See State v. Tichon
(1995), 102 Ohio App.3d 758, 767, 658 N.E.2d 16. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell (1996), 75 Ohio St.3d 163,166, 661 N.E.2d 1043. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips (1995), 74 Ohio St.3d 72, 83,656 N.E.2d 643.
 {¶ 27} "As a general rule, evidence which tends to show that the accused has committed other crimes or acts independent of the crime for which he stands trial is not admissible to show that he acted in conformity with his bad character." State v. Elliott (1993),91 Ohio App.3d 763, 770. However, Ohio Evid.R. 404(B) states that other acts testimony may be admissible for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 28} "Evidence of physical, emotional, and verbal abuse upon the victim or other family members, even if not included in the indictment, has been permitted in numerous jurisdictions, including this one." Statev. Williamson (Nov. 27, 2002), Cuyahoga App. No. 80982. In State v.William (Oct. 7, 1999), Cuyahoga App. No. 74840, evidence of physical and psychological abuse between the abuser and the victim which transpired in the home was relevant and probative of a method of control used to force sex upon the victim and was inextricably related to the charge of rape and gross sexual imposition.
 {¶ 29} Appellant argues that "but for" the above testimony coming into evidence as "prior bad acts," he would not have been convicted. We disagree.
 {¶ 30} First, Detective Strickler's testimony about the defendant having a prior concealed weapons conviction ("CCW") was an answer to a question asked by defense counsel on cross-examination as to why the appellant was arrested at work instead of at home. (Tr. 561-562.) Defense counsel did not move to strike or ask the trial court for a limiting instruction. The prosecution did not raise the CCW conviction, nor did he inquire into it; the appellant opened the door to this testimony.
 {¶ 31} Second, the appellant's defense throughout the trial was that the victim consented to the sexual relations that occurred on August 5. The appellant opened the door to these acts by questioning, if the victim had been raped by him, why did she wait so long to report it to the police? The prosecution elicited the testimony from the victim not to show the appellant's propensity for violence, but to show the jury why the victim did not report the rape to the police until August 19. The victim's testimony about the compelled sex with appellant, the appellant's threatening way of counting to five, the appellant choking her with a dog leash, and the appellant bossing her around like a child, shows the jury why the victim was afraid to call the police immediately after the rape, fearing what the appellant might do to her as a result.
 {¶ 32} Last, the appellant claims testimony about the vehicle he damaged on August 18 should have been excluded as a prior bad act. The final act of the appellant that compelled the victim to decide to report the rape to the police occurred on August 18. When the appellant returned to the victim's home and threatened to kill her with a screwdriver and then proceeded to tear apart the interior of Nicole Sander's vehicle, the victim knew her life was in danger. This testimony was not presented to show the defendant's violent propensity, but to explain why the victim finally went to the police.
 {¶ 33} Furthermore, according to State v. William, supra, evidence of physical and psychological abuse which transpired in a home between the abuser and the victim is relevant and probative of a method of control used to force sex upon the victim and was inextricably related to the charge of rape. Under Evid.R. 404(B), this testimony was properly admitted and tended to show the jury the appellant's plan to intimidate the victim as well as his motive, the sexual subjugation of the victim.
 {¶ 34} It was not plain error for the trial court to allow the testimony discussed above; therefore, appellant's second assignment of error is overruled.
 {¶ 35} "III. The trial court erred in allowing the prosecutor to question a witness about allegations of abuse against the appellant."
 {¶ 36} Appellant claims that under the United States and Ohio Constitutions, his due process rights and guarantees of confrontation were violated when the prosecution impeached the testimony of Leslie Brooks, appellant's ex-girlfriend, using four police reports.
 {¶ 37} Ohio courts have long held, "a witness may not be impeached by evidence that merely contradicts his testimony on a matter that is collateral and not material and (sic) to any issue in the trial." Boyminv. Alvis (1959), 169 Ohio St. 395, 398. If a witness denies certain conduct on cross-examination, the opponent is "stuck" with the answer and may not introduce extrinsic evidence unless the conduct is relevant to something besides credibility. In re Michael (1997), 119 Ohio App.3d 112,126-127.
 {¶ 38} However, Ohio Evid.R. 616 states:
 {¶ 39} "Methods of impeachment. In addition to other methods, a witness may be impeached by any of the following methods:
 {¶ 40} "(A) Bias. Bias, prejudice, interest or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence."
 {¶ 41} During trial, the victim testified that Leslie Brooks telephoned her and pleaded with her not to press charges against the appellant. Brooks asked the victim to think about his children. When Brooks was called to the stand, she testified that she has known the defendant for seven years, dated and lived with him for three years, and loved him very much. When Brooks was asked about her relationship with the appellant, she relayed that their relationship was loving, that they had a lot of fun together, and that appellant treated her very well. Then Brooks was asked whether she had ever filed a police report against the appellant, to which she replied, "I don't recall."
 {¶ 42} Introducing the police reports on cross-examination only to impeach the credibility of Brooks on a collateral matter would have been improper; however, given the testimony of the victim at trial, the introduction of the police reports was proper in order to impeach Brooks for bias. The fact that Brooks testified her relationship with the appellant was "loving" was a material issue and opened the door to this line of questioning. The prosecutor impeached her testimony by showing Brooks had a motive to misrepresent her relationship with the appellant — she did not want him to go to jail.
 {¶ 43} Last, appellant claims introduction of the police reports was highly prejudicial, and their introduction outweighed their probative value. The trial court limited the prosecution's use of the police reports during the impeachment of Brooks only to questions as to who filed them, against whom, and for what reason; therefore, the trial court did not abuse its discretion. Appellant's third assignment of error is hereby overruled.
 {¶ 44} Assignments IV and V will be addressed together because they are interrelated.
 {¶ 45} "IV. The trial court erred in ordering consecutive sentences for all six counts of rape where the counts should be merged for the purposes of sentencing."
 {¶ 46} "V. The trial court erred in imposing consecutive sentences without making the appropriate findings and reasons as required by R.C.2929.14."
 {¶ 47} In the appellant's fourth assignment of error, he contends the trial court should have merged all six rape counts for the purposes of sentencing. The appellant further argues the trial court erred because it did not make the appropriate findings and give reasons for sentencing him consecutively on the six counts of rape, as required by R.C. 2929.14.
 {¶ 48} As to the merging of the six rape counts, R.C. 2941.25(B) states:
 {¶ 49} "Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 50} Appellant was convicted on six of the eight counts of rape charged against him; five counts of rape resulted from appellant's actions on the morning of August 5 and one from later that afternoon.
 {¶ 51} In analyzing the record, we conclude that each instance of rape the appellant committed against the victim was done with a separate animus. Each of the appellant's actions that the victim testified to at trial formed a separate basis for the crime of rape when the appellant used his hands, mouth, and penis in a systematic order to penetrate her vagina. The victim stated the appellant's reason for penetrating her vagina was to see if she was sleeping with someone else. When each of the appellant's "tests" yielded no results, he raped her a different way.
 {¶ 52} It is evident from the victim's testimony that the appellant thought out his plan of rape and was telling the victim during the rape what he was going to do next. The victim pleaded with the appellant to stop each time he penetrated her vagina using a different part of his body.
 {¶ 53} From the victim's testimony, it is apparent that the appellant had the requisite animus needed to support his conviction on each rape count. Thus, appellant's fourth assignment of error is hereby overruled.
 {¶ 54} In regard to the imposition of consecutive sentences, R.C. 2929.14(E)(4) governs and states in relevant part:
 {¶ 55} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 56} "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 57} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 58} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 59} R.C. 2929.19(B)(2) provides that:
 {¶ 60} "The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
 {¶ 61} "* * *
 {¶ 62} "(c) If it imposes consecutive sentences under section2929.12 of the Revised Code, its reasons for imposing the consecutive sentences."
 {¶ 63} Thus, R.C. 2929.14(E)(4) requires the trial court to make at least three findings prior to sentencing an offender to consecutive sentences. Pursuant to R.C. 2929.19(B)(2), the trial court must also give the reasons behind its findings.
 {¶ 64} In the instant matter, we find the trial court complied with R.C. 2929.14 when imposing consecutive sentences on the appellant. First, the trial court found consecutive sentences were required in this case to protect the public from future crime or to punish the offender. (Tr. at 840-841.) Second, the trial court made a finding that the proposed consecutive sentences are not disproportionate to the seriousness of the offender's conduct. (Tr. at 839.) Third, the trial court made a finding that the proposed consecutive sentence is not disproportionate to the danger that the defendant poses to the public. (Tr. at 841.) Last, the trial court specified which of the three enumerated circumstances is present from R.C. 2929.14(E)(4)(a)-(c). (Tr. 840-841.)
 {¶ 65} In addition to making the above findings, the trial court is also required to give the reasons for its findings. Failure to sufficiently state the reasons for imposing consecutive sentences for convictions of multiple offenses constitutes reversible error. State v.Hoole (Nov. 8, 2001), Cuyahoga App. No. 79515. Merely reciting or tracking the statutory language in R.C. 2929.14 is not sufficient to comply with the mandate set forth in R.C. 2929.19(B)(2) for consecutive sentences. Id.
 {¶ 66} The trial court stated the following reasons for imposing consecutive sentences:
 {¶ 67} "And I think that from what I have heard in this trial it was probably one of the worst rape cases I have heard in a long time because, one, for a number of reasons, number one of them (sic) is the victim suffered serious physical and psychological harm in this case. And you used your relationship with her to belittle her, to demean her and to take advantage of her. One of the most shocking things to me in this case was her four-year-old child was in the apartment. My God, that's pretty bad. Number two is you went in there and you demeaned her in wanting to see if she had sexual intercourse with other men. I mean, and the way you checked for that was just shocking to me and it was shocking to the jury." (Tr. at 840.)
 {¶ 68} The trial court further stated the threatening phone calls made to the victim by the appellant, along with his history of violence towards the victim, warrants consecutive sentences in order to protect the public and punish the appellant for his crimes.
 {¶ 69} We conclude the trial court's findings and reasons for consecutive sentences were proper; therefore, appellant's fifth assignment of error is overruled.
 {¶ 70} Assignments of error VIII and IX will be addressed together because they are interrelated.
 {¶ 71} "VIII. The prosecutor committed prosecutorial misconduct by repeatedly eliciting testimony regarding the appellant's incarceration despite admonishments by the trial court."
 {¶ 72} "IX. The trial court plainly erred when it allowed the prosecutor to repeatedly question witnesses about the incarceration of the appellant."
 {¶ 73} In appellant's eighth and ninth assignments of error, he claims the prosecutor went out of his way, and the trial court permitted him, to send a message to the jury that the appellant was incarcerated pending trial.
 {¶ 74} The conduct of a prosecuting attorney during a trial generally cannot be made a ground of error unless the conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. State v. Papp (1978), 64 Ohio App.2d 203. Moreover, it has been held a trial court must afford the prosecutor some latitude and freedom of expression during argument. State v. Apanovitch
(1987), 33 Ohio St.3d 19. Therefore, a defendant shall be entitled to a new trial only when the prosecutor makes improper remarks and those remarks substantially prejudice the defendant. State v. Tibbetts,92 Ohio St.3d 146, 2001-Ohio-132; State v. Smith (1984),14 Ohio St.3d 13, 14.
 {¶ 75} First, the appellant claims the prosecutor committed prosecutorial misconduct when he questioned the victim about why the appellant did not return to her home later in the evening on August 6. The victim responded she learned that the appellant had been arrested for beating up his new girlfriend, Kim. The victim stated the appellant was calling her from jail wanting her to do things for him. However, it was the appellant himself, during the cross-examination of the preceding witness, Dr. El Choury, who originally opened the door to testimony that he was in jail. The appellant tried to use this testimony to make the jury question, if the rapes actually occurred on August 5, why was the victim still afraid to report them on August 9 when the appellant was in jail and could not harm her. On direct examination of the victim, the prosecutor followed this same line of questioning started by the appellant to show that the appellant was still calling the victim from jail and still had control over her.
 {¶ 76} Last, the appellant claims the prosecutor again committed prosecutorial misconduct when he questioned Leslie Brooks about whether she attempted to post bond for him before trial and whether she brought him the clothes he was wearing in the courtroom. The prosecutor's questions were used to show the bias of Brooks, not the fact that the appellant was in jail, and were proper in light of a defense witness who attempted to minimize her relationship with the accused.
 {¶ 77} The prosecutor was well within bounds to explain away the appellant's attack on the victim's credibility as to why she did not report the rapes while the appellant was in jail. The appellant opened the door to this testimony when he elicited the response from Dr. El Choury and tried to use it to his advantage. In concluding, the prosecutor was well within bounds to use examples of what Brooks attempted to do for the appellant while he was in jail to show her bias.
 {¶ 78} Given the record in this case, we cannot hold that the prosecutor's conduct or the trial court's rulings rise to the standard of reversible error and grant of a new trial. Appellant's eighth and ninth assignments of error are hereby overruled.
 {¶ 79} "X. The trial court erred in allowing the midwife, the treating physician, Crystal Murray, and others to testify regarding who allegedly inflicted the injuries claimed by the victim."
 {¶ 80} Appellant claims the trial court allowed Kathleen Pullen, the midwife, Dr. El Choury, the treating physician, Crystal Murry, a friend, and others to testify regarding who allegedly inflicted the injuries on the victim.
 {¶ 81} First, no where in the record does Dr. El Choury testify that the appellant inflicted the injuries he found on examination of the victim. In fact, Dr. El Choury specifically declined to answer a question asked by the prosecutor as to whether the victim told him who inflicted her injuries. (Tr. at 259.)
 {¶ 82} Second, the midwife who initially examined the victim's injuries on August 9 testified the victim told her that "* * * her boyfriend came to see her Monday * * * he just started beating her and then he raped her." (Tr. at 234-235.) Clearly, Pullen never identified Madsen in court as being the victim's boyfriend. Second, the identity of the perpetrator was never at issue; Pullen was testifying to hearsay, what the victim said to her. It was error for the trial court to allow in testimony by Pullen as to a "boyfriend" causing the victim's injuries; however, it does not constitute reversible error.
 {¶ 83} Last, appellant claims Crystal Murry, the victim's friend, was allowed to testify that the appellant inflicted the injuries on the victim. Murry stated, "She told me he was upstairs, they got into an argument about a party she had. He just started going off, just beating her. And she told me he threatened to kill her with a screwdriver and the kids were up there, so she was really scared." (Tr. at 87.) Again, the testimony of Murry constituted hearsay about what the victim told her the appellant did; however, Murry's testimony was relevant not for identifying the appellant as the perpetrator, but to describe how the victim looked right after the rape. Although Murry's testimony was inadmissible under hearsay rules, it was admitted without objection.
 {¶ 84} Given that the standard of plain error applies, we cannot say the outcome of the trial would have been different if this testimony was excluded. Appellant's tenth assignment of error is hereby overruled.
 {¶ 85} "XI. The trial court error [sic] not allowing defense counsel to cross examine the alleged victim on why she did not file a police report and as to her alleged fear of the appellant."
 {¶ 86} Here, the appellant contends that his constitutional rights to due process and a trial by jury were violated because the trial court would not allow him to cross-examine the victim as to why she did not file a police report and about her alleged fear of the appellant. He claims the trial court blackmailed him into abandoning this line of questioning because, if pursued, the prosecutor would be able to inquire into specific allegations of domestic violence committed against other women.
 {¶ 87} The appellant misconstrues the trial court's ruling in that it was effectuated to go against the prosecution's case, not the defense. The trial court did not prevent the appellant from asking why the victim did not file a police report immediately after the rape or why the victim was so afraid of the appellant. The trial court simply limited the prosecution from inquiring into past allegations of domestic violence of which the victim had first-hand knowledge. The trial court instructed the appellant that if he continued to dwell on and question the victim about her fear of him, the court would allow the prosecution to defend the allegations raised using any first-hand knowledge the victim possessed. Furthermore, the appellant agreed to the limitation, in his own best interests.
 {¶ 88} The scope of cross-examination and the admissibility of evidence during cross-examination are matters which rest in the sound discretion of the trial judge. O'Brien v. Angley (1980), 63 Ohio St.2d 159,163; therefore, appellant's eleventh assignment of error is overruled.
 {¶ 89} "XII. The trial court erred in allowing several witnesses to testify as to the cycle of violence associated with abusive relationships and persons without first-hand knowledge testify as to the relationship between the appellant and alleged victim."
 {¶ 90} Appellant argues that the trial court erred in permitting the testimony of Dr. El Choury, Kathleen Pullen, Crystal Murry, and Detective Strickler regarding the cycle of violence in abusive relationships. Appellant claims this testimony is highly prejudicial and serves only to stir the emotions of the jury while providing no probative value.
 {¶ 91} During trial, the appellant continuously attempted to discredit the victim's claims of rape because she did not report the rapes the same day they occurred. The testimony of Dr. El Choury, Kathleen Pullen, and Detective Strickler was relevant to rebut the appellant's assertions and provide an explanation to the jury for the victim's delay in reporting.
 {¶ 92} Evid.R. 701 states:
 {¶ 93} "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of an issue."
 {¶ 94} The testimony provided by Dr. El Choury, Crystal Murry, Kathleen Pullen, and Detective Strickler was based on each of their personal observations of the victim shortly after the rape. The witnesses never claimed to be experts, nor did they testify as experts. They simply made inferences and offered opinions, based on their own common sense and personal and professional life experiences, as to why the victim waited so long to report the rapes. Their inferences and opinions were rationally based on their first-hand perceptions of the victim.
 {¶ 95} Given plain error review, we cannot find striking the testimony of Dr. Choury, Kathleen Pullen, Crystal Murry, or Detective Strickler regarding the cycle of violence associated with abusive relationships would have led to a different trial outcome for the appellant. Appellant's twelfth assignment of error is hereby overruled.
 {¶ 96} "XIII. The trial court erred in forbidding defense counsel to examine officer Madsen in connection with his observations as a police officer."
 {¶ 97} In appellant's thirteenth assignment of error, he claims that the trial court did not allow him to ask Officer Madsen, appellant's brother, about his professional experience in dealing with sex abuse victims and how they should act after a rape.
 {¶ 98} Officer Madsen was not testifying at trial in his official capacity as a police officer, even though he testified in full uniform. He was called as a witness for the defense to testify as to how the victim seemed to act in the early morning hours of August 6. After reviewing the record, the appellant asked Officer Madsen how he would handle a typical domestic violence, rape, or sexual abuse call in his professional capacity as a police officer. The trial court eliminated this line of questioning based on relevancy; however, the trial court did not limit Officer Madsen's observations as a police officer regarding how the victim appeared and acted on August 6.
 {¶ 99} Appellant's thirteenth assignment of error is unfounded and hereby overruled.
 {¶ 100} Assignments VI and VII will be addressed together because they are interrelated.
 {¶ 101} "VI. Trial counsel was ineffective in failing to move to sever count eleven, robbery, from the trial of the remaining counts."
 {¶ 102} "VII. Trial counsel was ineffective where he failed to offer a meaningful and reliable testing of the adversarial system."
 {¶ 103} Appellant argues several grounds for ineffective assistance of counsel. First, the appellant claims defense counsel failed to move the court to sever the count of aggravated robbery from the other counts of rape, kidnaping, and domestic violence, thereby stirring the passions and prejudices of the jury. Second, the appellant claims defense counsel ineffectively failed to represent him by failing to object to inadmissible evidence during trial.
 {¶ 104} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Stricklandv. Washington (1984), 466 U.S. 668, State v. Brooks (1986),25 Ohio St.3d 144.
 {¶ 105} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith
(1985), 17 Ohio St.3d 98; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299.
 {¶ 106} The Supreme Court of Ohio, with regard to the issue of ineffective assistance of counsel, held in State v. Bradley (1989),42 Ohio St.3d 136, that:
 {¶ 107} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." Statev. Lytle (1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498,358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910. This standard is essentially the same as the one enunciated by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668."
 {¶ 108} Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365
(1981)." Strickland, supra, at 691. To warrant reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra, at 694. In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice. * * *.
 {¶ 109} "Accordingly, to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley,
supra, at 141, 142.
 {¶ 110} We disagree with the appellant's argument that trying the aggravated robbery charge together with the rape and kidnaping counts caused the jury to see appellant as a hardened criminal and stirred the passions and prejudices of the jury. The incidents which occurred on August 5 and August 18 are interrelated. Defense counsel developed a trial strategy to use the incidents occurring on August 18 to attack the victim's credibility as to why she waited so long to report the rapes occurring on August 5. Furthermore, the appellant was acquitted of aggravated robbery, eliminating any prejudice in joining this charge. We cannot find that the outcome of the trial would have been different if defense counsel had severed aggravated robbery from the other charged crimes.
 {¶ 111} Next, appellant claims the numerous instances of failure to object to inadmissible evidence constitutes an utter breakdown of the adversarial process and led to ineffective assistance of counsel. Appellant cites to assignments of error II, VIII, IX, X, and XII to support his argument.
 {¶ 112} The court of appeals has held that the failure to object is a trial tactic and, absent a demonstration of prejudice, does not constitute ineffective assistance of counsel. State v. Hunt (1984),20 Ohio App.3d 310.
 {¶ 113} In reviewing the stated assignments of error and the record in this case, we must reject the appellant's argument that he was denied effective assistance of counsel. We have overruled assignments of error II, VIII, IX, X, and XII, finding the evidence admissible, thus no error. Failure to object to the introduction of certain evidence was a trial tactic used by defense counsel in order to allow evidence to be introduced to show that the victim should not have been afraid to report the rapes on August 9 because the appellant was in jail and that she was a scorned and rejected lover and was jealous of his new girlfriend.
 {¶ 114} Considering the trial tactics used by defense counsel and the fact we found no error in the assignments presented by the appellant, there was no prejudice, and the outcome of the trial would have been no different than if the objections were made. Appellant's sixth and seventh assignments of error are hereby overruled.
Judgment affirmed.
Anthony O. Calabrese, Jr., J., Concurs. Patricia A. Blackmon, P.J.,Concurs in judgment only.